UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHALYNN F. PADDOCK, | Case No. 1:21-cv-00493-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| BRIANNA DIXON *et al*, | |
| Defendants. | |

## I. INTRODUCTION

Pending before the Court is Plaintiff Shalynn Paddock's Motion for Federal Injunctive Relief. Dkt. 3. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons explained below, the Court DENIES Paddock's Motion.

## II. BACKGROUND

Paddock filed the instant suit on December 10, 2021. Dkt. 1. Broadly speaking, Paddock brings various civil rights claims against certain private citizens, two Idaho State Court Magistrate Judges, and numerous unknown "John Does" based upon actions each has taken, is taking, or shortly will be taking, in various custody proceedings to which she

is a party. *See generally id*. In short, these allegations appear to be part of an ongoing dispute between Paddock and one (or more) other individuals who have legal custody of Paddock's various minor children. Paddock contends the private individual defendants are violating her privacy rights and her rights of "familial association" by making false allegations against her and meddling in her custody proceedings. *Id*. at 22. Paddock further asserts that these private individuals, along with the two Magistrate Judges, are violating her First, Fifth, and Fourteenth Amendment rights as part of the ongoing state-court custody proceedings. *Id*.[1]

Upon filing, this case was assigned to United States Magistrate Judge Raymond E. Patricco. Summonses were issued on December 13, 2021 (Dkt. 2) and served (except as to Defendant Angela Sasser) on December 15, 2021 (Dkt. 4). To date, no Defendant has appeared.

On December 16, 2021, Paddock filed a motion entitled "Motion for Federal Injunctive Relief." Dkt. 3. In this Motion, Paddock references Federal Rule of Civil Procedure 65(a) and requests that the Court "stay" certain state court proceedings. *Id*. at 1, 4. Paddock also contends the Court should: 1) prohibit three of the defendants from "report[ing] to the authorities in bad faith concerning [her] children;" 2) dismiss or move various state court proceedings "to another county [] under a fair and equitable judge;" and 3) return one of her children to her custody pending the outcome of this lawsuit. *Id*. at 4.

---

[1] The Court notes that Paddock brought a lawsuit similar to the present case some years ago. In Case No. 1:18-cv-00005, Paddock sued various defendants (some of whom are named in this suit) alleging claims similar to those at issue here. The various defendants in that case moved for dismissal. On referral, United States Magistrate Judge Candy W. Dale recommended that each motion to dismiss be granted. The undersigned adopted Judge Dale's report and dismissed the case.

In reviewing the instant motion, Judge Patricco first noted that while Paddock referenced Rule 65(a) on the face of her pleadings (dealing with preliminary injunctions), there was no evidence Paddock served the Motion on any Defendant. Without this required service and/or notice, an injunction cannot issue. *See* Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction *only on notice to the adverse party*.") (emphasis added). Judge Patricco also noted, however, that Paddock referenced an upcoming January 5, 2022, state court proceeding, and asserted that she "has sustained and will sustain irreparable injury due to the pending State of Idaho Civil Judicial Proceedings concerning her children E.B. and M.B. if this stay is denied." Dkt. 3, at 4. In light of this language, Judge Patricco found that:

> [T]o the extent these allegations implicate FRCP 65(b) (dealing with temporary restraining orders and not requiring notice to the adverse party if, inter alia, "immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition . . . ."), the undersigned is without jurisdiction pursuant to 28 U.S.C. § 636(b)(1)(A).

Dkt. 5, at 1–2. Assuming for the sake of argument that Paddock's request fell under subsection (b), Judge Patricco directed the Clerk of the Court to reassign the case to a United States District Judge since not all parties had consented to proceed before him. *Id.* at 2. In conclusion, Judge Patricco noted that the District Judge who received this case should consider the pending emergency motion "alongside the potential application of abstention principles, the *Rooker-Feldman* doctrine, the Anti-Injunction Act, 28 U.S.C. § 2283, and/or relevant immunities." *Id.* Thereafter, this case was reassigned to the undersigned judge on December 29, 2021.

///

MEMORANDUM DECISION AND ORDER - 3

### III. LEGAL STANDARD

In deciding whether to grant a motion for a temporary restraining order, courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *Edwards v. Kuersten*, 2021 WL 5298866, at *2 (E.D. Cal. Nov. 15, 2021). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test, which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing of one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by making a "clear showing" with respect to the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

### IV. ANALYSIS

As Judge Patricco aptly noted, it does not appear Paddock has complied with certain procedural aspects of Rule 65(a)—namely service. Whether by mistake or design, that

failure renders Paddock's request under subsection (a) moot until such time as she can provide proof that Defendants have been served with the motion and/or are otherwise on notice of her request. Second—and again, whether by mistake or design—even assuming the Court construes Paddock's request under Rule 65(b) and does *not* require notice, the Court cannot grant the relief sought.

With respect to the *Winter* factors, the Court concludes that Paddock has not made a sufficient showing of a likelihood of success on the merits or of serious questions going to the merits of her claims.

### A.  Success on the Merits

*1.  Abstention*

First, under the long-standing *Younger* abstention doctrine, federal courts must abstain from hearing cases that would interfere with pending state court proceedings that implicate important state interests. *Younger v. Harris*, 401 U.S. 37 (1971); *Potrero Hills Landfill, Inc. v. Cty. of Solano*, 657 F.3d 876, 881 (9th Cir. 2011). Critically, the Ninth Circuit has long held federal courts should abstain from adjudicating domestic relations cases, including those involving the custody of children:

> The strong state interest in domestic relations matters, the superior competence of state courts in settling family disputes because regulation and supervision of domestic relations within their borders is entrusted to the states, and the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state makes federal abstention in these cases appropriate.

*Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir. 1983).

Furthermore, even where, as here, a federal question has arguably been presented, "federal courts decline to hear disputes which would deeply involve them in domestic matters." *Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir. 1986) (citations omitted). *See also Coats v. Woods*, 819 F.2d 236, 237 (9th Cir. 1987) (finding that the case, "while raising constitutional issues, is at its core a child custody dispute. The state courts have already considered the merits of [the] claims. . . . The district court was aptly reluctant to put itself in the position of having to review the state courts' custody decision").

Relatedly, under 28 U.S.C. § 2283, "a court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." No such circumstances appear present in this case.

In short, the Court will not interject itself in future state court proceedings—to stay them, change venue, or take any other action—as such would invade the state's interests and "superior competence" in those matters.

*2. Rooker-Feldman Doctrine*

Second, Paddock alleges that certain actions *that have already taken place* violated her rights and warrant this Court's emergency intervention. Again, not so.

A federal district court has no jurisdiction "over challenges to state-court decisions, in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). This rule of law is known as the *"Rooker–Feldman* doctrine."

As the United Supreme Court has explained:

> In *Rooker v. Fidelity Trust Co.*, the parties defeated in state court turned to a Federal District Court for relief. Alleging that the adverse state-court judgment was rendered in contravention of the Constitution, they asked the federal court to declare it null and void. This Court noted preliminarily that the state court had acted within its jurisdiction. If the state-court decision was wrong, the Court explained that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Federal district courts, the *Rooker* Court recognized, lacked the requisite appellate authority, for their jurisdiction was strictly original.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (cleaned up).

In short, the *Rooker–Feldman* doctrine "bars federal courts from exercising subject-matter jurisdiction over a proceeding in which a party losing in state court seeks what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Doe v. Mann,* 415 F.3d 1038, 1041 (9th Cir. 2005) (cleaned up).

Anything that has happened to date in Paddock's state court proceedings is not reviewable by this Court, nor does it grant this Court power to intervene at this time.

3. *Immunity*

Finally, 42 U.S.C. § 1983 sets forth civil liability for anyone who—acting under the color of state of federal law—deprives a person of their constitutional rights. While certain persons will be liable for their actions under § 1983, the statute makes clear that "except [] in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity*, injunctive relief shall not be granted* unless a declaratory decree was violated or declaratory relief was unavailable." *Id.* (emphasis added).

Judges have long been accorded absolute immunity from actions for damages for their judicial acts. *See Wyatt v. Cole*, 504 U.S. 158 (1992). The common law recognizes several absolute immunities from suit under § 1983. Among these, state court judges have absolute immunity from suit for damages arising from their judicial acts unless they act in a complete absence of jurisdiction. *See Mireles v. Waco*, 112 S. Ct. 286 (1991).

In short, not only will the Court not intervene under principles of abstention and the *Rooker-Feldman* doctrine, but the two judges named as defendants are *likely[2]* improper defendants and immune from suit.

### B.  Remaining *Winter* Factors

The Court finds that for the three reasons outlined above (and potentially more), Paddock cannot show that she is likely to succeed on the merits of her claims. This weighs strongly against a preliminary injunction or temporary restraining order.

What is more, the other *Winter* factors cannot save Paddock's request. While Paddock is emphatic that she will suffer irreparable harm (factor 2) if the state court proceedings go forward—which the Court will assume for purposes of the instant motion— the public interest in an injunction here (factor 3), as well as the balance of equities (factor 4) are best served by *not* granting Paddock's request, but by allowing the Idaho state court proceedings to continue uninhibited.[3] Specifically, given the strong state interest in

---

[2] The Court highlights immunity is "likely," rather than certain, because it has not been presented with a full picture of what is at stake here, nor has it been asked to determine if any party is appropriately named as a defendant. The Court concerns itself today solely with Paddock's request for injunctive relief.

[3] In fact, it appears Paddock is actively trying to stop (or at least stall) the state court proceedings with this federal lawsuit. Dkt. 3, at 2.

domestic relations matters, the superior competence of state courts in settling family disputes, and the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision, the third and fourth factors weigh against the relief Paddock seeks. *Peterson*, 708 F.2d at 466.

In sum, Paddock has not met her burden to obtain emergency injunctive relief. The Court must DENY the Motion.

## V. ORDER

1.    Paddock's Motion for Federal Injunctive Relief (Dkt. 3) is DENIED.

DATED: December 30, 2021

David C. Nye
Chief U.S. District Court Judge