UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHALYNN F. PADDOCK,<br><br>       Plaintiff,<br><br>       v.<br><br>BRIANNA DIXON, *et al.*,<br><br>       Defendants. | Case No. 1:21-cv-00493-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are numerous Motions to Dismiss filed by the various Defendants in this case. Dkts. 11, 14, 20, 26. Plaintiff Shalynn Paddock has also filed a Motion to Disqualify (Dkt. 18), a Motion for Summary Judgment (Dkt. 20), and a Motion for Default Judgement (Dkt. 30).

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons outlined below, the Court DENIES Paddock's various Motions, GRANTS all the Motions to Dismiss, and DISMISSES this case WITH PREJUDICE.

///

///

## II. BACKGROUND

Paddock filed the instant suit on December 10, 2021, on behalf of herself and her two minor children, M.B. and E.B. Dkt. 1.[1] Broadly speaking, Paddock brings various civil rights claims against certain private citizens, two Idaho State Court Magistrate Judges, and numerous unknown "John Does" based upon actions each has taken, is taking, or may still be taking, in Idaho state court custody proceedings to which she is a party. *See generally id*. Paddock does not have custody of M.B. and E.B. and asserts the various defendants violated her rights in obtaining legal custody of said children.[2]

Paddock contends the individual Defendants violated her privacy rights and her rights to "familial association," and by making false allegations against her and/or meddling in her custody proceedings. *Id*. at 22. Paddock further asserts that all the Defendants—included the two Magistrate Judges—violated her First, Fifth, and Fourteenth Amendment rights as part of the ongoing custody proceedings. *Id*.[3]

On December 16, 2021, Paddock filed a motion entitled "Motion for Federal Injunctive Relief." Dkt. 3. In that Motion, Paddock referenced Federal Rule of Civil Procedure 65(a) and requested that the Court "stay" certain state court proceedings. *Id*. at

---

[1] Paddock apparently has a third minor child whom she has given the "fictitious name" F.P. Dkt. 1, at 2. F.P. does not appear to be involved in the facts giving rise to this case.

[2] In the briefing, various parties note that a trial was scheduled for March 28, 2022, to determine the custody issue. The Court does not know whether that trial occurred or what the outcome was.

[3] The Court notes that Paddock brought a lawsuit similar to the present case some years ago. In Case No. 1:18-cv-00005, Paddock sued various defendants (some of whom are named in this suit) alleging claims similar to those at issue here. The various defendants in that case moved for dismissal. On referral, United States Magistrate Judge Candy W. Dale recommended that each motion to dismiss be granted. The undersigned adopted Judge Dale's report and dismissed the case. *Paddock v. Ballou*, 2018 WL 3642443 (D. Idaho Aug. 1, 2018).

1, 4. Paddock also contended the Court should (1) prohibit three of the defendants from "report[ing] to the authorities in bad faith concerning [her] children;" (2) dismiss or move various state court proceedings "to another county [] under a fair and equitable judge;" and (3) return one of her children to her custody pending the outcome of this lawsuit. *Id*. at 4.

In a decision issued on December 30, 2021, the Court concluded an injunction was not appropriate in this case. The Court first noted—in response to Paddock's contentions that she was suffering *ongoing* harms—that under "the long-standing *Younger* abstention doctrine, federal courts must abstain from hearing cases that would interfere with pending state court proceedings that implicate important state interests." Dkt. 6, at 5.

The Court also explained that insofar as any of Paddock's claims related to *completed* state court proceedings, the *Rooker-Feldman* doctrine barred the Court from exercising jurisdiction "over challenges to state-court decisions, in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action was unconstitutional." *Id*. at 6.

Finally, the Court described that the Judges Paddock sued were likely immune under the Eleventh Amendment. *Id*. at 7–8. In sum, the Court found Paddock had not met her burden and denied the Motion for emergency injunctive relief.

Thereafter the various Defendants appeared via notice or Motions to Dismiss. Dkts. 7, 8, 11, 14.[4]

---

[4] Of note, the two appearances via notice—for Dixon (Dkt. 7) and the Bramels (Dkt. 8)—were shortly followed by Motions to Dismiss for those parties as well.

First, Defendants McDevitt[5] and Onanubosi, both of whom are Idaho State Court Magistrate Judges, filed a Motion to Dismiss based upon principles of immunity under the Eleventh Amendment. Dkt. 11.

Next, Defendant Angela Sasser, who was the Court-appointed guardian ad litem in the state custody proceedings, filed a Motion to Dismiss based upon quasi-judicial immunity and Federal Rule of Civil Procedure 12(b)(6).

Paddock then filed a Motion to Disqualify an attorney who had appeared on behalf of Defendant Brianna Dixon. Dkt. 18. Dixon timely responded in objection. Dkt. 22.

Paddock then filed a Motion for Summary Judgment asking the Court to enter summary judgment[6] against the individual defendants because she served them in December 2021, and they had failed to respond to her complaint within the requisite 21 days. Dkt. 20.

Defendant Dixon then filed a Motion to Dismiss (Dkt. 21) as did Defendants Christopher Bramel, Cindy Bramel, and Stephen Bramel (collectively "the Bramels) (Dkt. 26). These defendants are all private citizens who are connected to Paddock in some way. Their motions are based upon Federal Rule of Civil Procedure 12(b)(6) and the fact that 42 U.S.C. § 1983 does not provide a private right of action against lay citizens.

---

[5] Paddock has misspelled this Judge's name as "McDivitt" in her filings.

[6] Paddock's motion is titled "summary judgment," but references Federal Rule of Civil Procedure 55, which deals with default judgment. The Court will address this in further detail below.

Paddock then filed a Motion for Default Judgment against Defendant Dixon, again claiming she did not respond to the Complaint within the required 21-day timeframe. Dkt. 30.

The parties responded and replied to most, but not all, of the pleadings. The matters are now ripe for the Court's review.[7]

### III. ANALYSIS

The Court will address Paddock's Motions at the outset as they affect the procedural posture of the case. The Court will then address the Defendants' Motions to Dismiss as they touch on the substance of the claims at issue.

#### A. Motion to Disqualify Counsel (Dkt. 18)

In this motion, Paddock seeks to disqualify counsel for Dixon—Aaron Morris. Paddock claims that Morris is representing Dixon in the state case and that this creates a conflict of interest. Dkt. 18, at 1. She also questions whether Morris informed the Court that he was previously disciplined by the Idaho Supreme Court. *Id.*

Dixon responded in objection noting that there is no requirement Morris alert the Court to past discipline and that she is entitled to retain whomever she wishes to represent her. Dkt. 22, at 2. The Court agrees.

---

[7] Additionally, the Court notes that Paddock, as well as Counsel for most of the Defendants, have called or emailed the Court on multiple occasions requesting information and/or updates about this case. Some of the communications were more polite and professional than others. The Court appreciates all parties' diligence and their interest in the outcome of this case. That said, the Court is well-aware of the pending motions. The undersigned currently presides over 470 civil and criminal cases and is the only active federal judge in the District of Idaho. Thus, despite the important matters at issue here, the Court can only work as fast as resources and time allows. Constant inquiries from the parties do not speed matters up.

MEMORANDUM DECISION AND ORDER - 5

First, the Court has no interest in past discipline that was resolved through proper processes. Second, Paddock's bald assertion of conflict, without more, does not rise to a level warranting concern. Parties are free to hire counsel of their choosing. In fact, it is not uncommon for an attorney to represent a party in varying courts such as Morris appears to be doing here; this course of action is efficient and economical.

Because Paddock does not have any substantive reasons calling into question Morris's ability to fairly and ethically represent Dixon in this case, the request to disqualify Morris is OVERRULED, and the Motion is DENIED.

### B. Motion for Summary Judgment (Dkt. 20) / Motion for Default (Dkt. 30)

Paddock's first motion on this subject is titled "Motion for Summary Judgment." Her second is titled "Motion for Default." Despite the title of the first, it is clear the purpose of both filings is the same: default judgment.[8]

Paddock served Dixon and the Bramels on December 15, 2021. Dkts. 4, 4-2, 4-3, 4-5. Accordingly, pursuant to Federal Rule of Civil Procedure 12, each had 21 days in which to answer or otherwise respond. That placed the due date on January 5, 2022. While attorneys appeared for both Dixon and the Bramels on January 3, 2022 (Dkts. 7, 8), neither party answered nor filed a motion to dismiss by the deadline. Thus, Paddock has requested default judgment.

Dixon elected to respond to Paddock's motions, but the Bramels did not. Dkts. 28, 34.

---

[8] Even in her motion titled "Summary Judgment," Paddock requests "a default judgment . . . be ordered by this court." Dkt. 20, at 1.

In her first response, Dixon spends a great deal of time discussing why summary judgment is improper and outlining all the factual disputes in this case. Dkt. 5, at 2–7. However, this is immaterial. Paddock clearly meant for this motion to be a motion for default judgment. Furthermore, because this case is in its infancy, a motion for summary judgment would be improper. Dixon's response to Paddock's second motion reads like an answer to the motion—written in paragraph's that correspond to her paragraphs, agreeing and disagreeing with the allegations. Dkt. 34, at 2–3. Thus, between the two responses, only a few paragraphs from Dixon's first response actually deal with the matter at hand: default judgment.

Dixon first claims that the affidavit shows she was served on December 17, 2022. Not so. It clearly states she was served on December 15, 2022. Dkt. 4. Additionally, Dixon claims Paddock is misinformed because her attorney's "appearance qualifies as a responsive pleading." Dkt. 28, at 8. This is also incorrect. An appearance is just that: an appearance. It is not an answer or responsive pleading as defined in Federal Rule of Civil Procedure 12.[9] *Hyundai Merch. Marine Co. v. Conglobal Indus., LLC*, 2016 WL 1613949, at *4 (N.D. Tex. Apr. 21, 2016) (holding that defendant's "Notice of Appearance is not a responsive pleading or answer on the merits"); *Schwartz v. Snohomish Cnty.*, 2006 WL 692024, at *9 (W.D. Wash. Mar. 17, 2006) ("[A] notice of appearance is not a responsive

---

[9] Dixon's position also does not make sense in light of Rule 55(b)(2), which she cites in her opposition. Default, with appropriate notice, can be sought against persons who have appeared, *but have not* "plead or otherwise defend[ed]." Fed. R. Civ. P. 55(a). Said differently, an appearance—standing alone—does not preclude default. Such was the case here: Dixon timely appeared, but she did not timely plead or otherwise defend herself.

pleading . . . .”). In short, Dixon (and the Bramels) should have filed an answer or a responsive pleading or asked for more time to do so.

Nevertheless, just because an appearance is not an answer under Rule 12 does not mean it satisfies Rule 55’s default requirements. First, in order to obtain default judgment, a party must obtain Clerk’s entry of default. The Court has explained this two-step process before—in Paddock’s prior case in fact. *Paddock v. Ballou*, 2018 WL 1902678, at *1 (D. Idaho Apr. 20, 2018). Paddock did not properly request Clerk’s entry of default before seeking default judgment. This dooms her request at the outset. Even then, however, because Dixon and the Bramels did appear (albeit via simple appearance and not via an answer or other responsive pleading) the Court would have held a hearing, with sufficient notice, to review the request for default.

In sum, Paddock’s request does not comply with Rule 55, nor is it appropriate in this case. Her Motion for Summary Judgment (Dkt. 20) and Motion for Default (Dkt. 30) are DENIED.

### C. Defendants’ Motions to Dismiss

To begin, the Court reiterates its comments about the *Younger* abstention doctrine (for ongoing state court proceedings) and the *Rooker-Feldman* doctrine (for completed state court proceedings) from its prior decision. The Court is loath to intervene (in any way) in ongoing state law matters—especially when the subject matter is family law.

Family law issues—including child custody and child support—are matters of Idaho state law and should be dealt with in that forum. As the Ninth Circuit has noted:

> The strong state interest in domestic relations matters, the superior competence of state courts in settling family disputes because regulation and supervision of domestic relations within their borders is entrusted to the states, and the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state makes federal abstention in these cases appropriate.

*Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir. 1983).

Further, even where a federal question is presented, "federal courts decline to hear disputes which would deeply involve them in adjudicating domestic matters." *Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir. 1986) (cleaned up); *see also Foster v. Meriter Hosp.*, No. 07-C-464-C, 2007 WL 5582711, at *1 (W.D. Wis. Sept. 26, 2007) ("[T]he family law exception to federal jurisdiction applies even when a party is alleging a violation of federal law. Courts may not resolve child custody dispute questions regardless of the reason a party believes a custody decision is invalid, even if there is an allegation of a constitutional violation.").

These overarching concerns aside, the Court will analyze the various Motions to Dismiss individually. And while each Defendant (or group of Defendants) argues there are specific reasons they should be dismissed from this case, all bring their motions under Federal Rule of Civil Procedure 12(b)(6). The Court will, therefore, outline that standard now and then discuss any other applicable standards within the individual requests.

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted. A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare*

*Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570. In considering a Rule 12(b)(6) motion, the Court must view the complaint in the light most favorable to the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122.

Finally, in determining whether a Rule 12(b)(6) dismissal should be granted, the Court may not look at matters outside the complaint. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir. 1998). However, the Court can take judicial notice of any document not attached to the complaint if the complaint specifically refers to it and its authenticity is not questioned. Fed. R. Evid. 201(f); *Townsend v. Columbia Operations*, 667 F.2d 844, 848–49 (9th Cir. 1982).

1. *Defendants McDevitt and Onanubosi (Dkt. 11)*

As the Court explained in its prior decision, Judge McDevitt and Onanubosi ("the Judges") are immune from liability when sued in their official capacities. Dkt. 6, at 7–8.

That is the Judges' primary argument in support of their present Motion to Dismiss. The Court agrees the Eleventh Amendment bars Paddock's claims against them.

Judges have long been accorded absolute immunity from damage actions arising out of judicial acts taken within the jurisdiction of their courts. *See Wyatt v. Cole*, 504 U.S. 158 (1992); *Bradley v. Fisher*, 80 U.S. 335 (1871). Title 42 U.S.C. § 1983 was not intended to abolish the doctrine of judicial immunity. *Pierson v. Ray*, 386 U.S. 547, 554–55 (1967). Judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Cleavinger v. Saxner*, 474 U.S. 193 (1985) (quoting *Bradley*, 80 U.S. at 347). Said another way, judges have absolute immunity from suit for damages arising from their judicial acts unless they acted in a complete absence of jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 12 (1991).

Here, Paddock does not allege the Judges acted in a complete absence of jurisdiction. She simply disagrees with their rulings. Her disagreements, however, do not remove the immunity shield afforded judges. In her response (which was filed long-past the appropriate deadline), Paddock outlines various "factors" that contributed to the Judges' incorrect decisions. None, however, are really "facts" about the underlying case; instead, they are speculative statements meant to show some type of collusion or conspiracy between the Judges and other parties. Paddock draws "logical conclusions" from certain actions, questions why other actions were undertaken, and concludes the Judges have "kidnapped [her children] under Color of Law." Dkt. 31, at 3. These hyperbolic statements do not, however, illustrate the Judges' actions were taken outside the scope of their professional duties and jurisdiction.

MEMORANDUM DECISION AND ORDER - 11

As will be reiterated throughout this decision, Paddock's complaints, concerns, or disagreements with the custody proceedings process do not equal conspiracies or constitutional deprivations. Paddock has not carried her burden under Rule 12. She has not alleged that the Judges' actions in the underlying state court case were not part and parcel to their normal judicial duties.

The Court has reviewed Paddock's filings, and while it is clear she is dissatisfied with the Judges' rulings, there is nothing to indicate either acted in complete absence of his or her jurisdiction. A judge who simply hands down rulings that one party disagrees with is not acting in absence of authority. As the Court has noted elsewhere: "The bottom line is [] adverse or unfavorably rulings do not give rise to claims of judicial misconduct." *Quinn v. Kibodeaux*, 2020 WL 6701457, at *2 (D. Idaho Nov. 13, 2020), *aff'd*, 837 F. App'x 500 (9th Cir. 2021).

Paddock is welcome to disagree with the Judges' decisions, but her mere disagreement do not rise to the level of constitutional violations, nor does it mean the Judges' decisions are subject to review by this Court.

The Judges' Motion to Dismiss (Dkt. 11) is GRANTED.

2. *Defendant Angela Sasser (Dkt. 14)*

Defendant Sasser is a court-appointed guardian ad litem who was involved in the state custody proceedings involving Paddock and her children.

A judge appointed Sasser on September 16, 2021, to evaluate the custody dispute between Paddock and Dixon. She dutifully investigated the situation, filed recommendations, and attended various hearings.

As will be explained below when discussing Defendant Dixon, this whole lawsuit arose essentially out of Paddock's disagreement with Sasser's recommendation to place Paddock's minor child with Dixon—who had been granted a temporary guardianship over the child—and Judge Onanubosi's order for that temporary guardianship.

As with the Judges, Paddock disagrees with some of Sasser's official acts as guardian ad litem and the resulting outcome. She complains that Sasser was rude and aggressive towards her, that she provided false statements against Paddock, and that she violated Paddock's rights under various constitutional provisions.

Like the Judges, Sasser seeks dismissal based upon immunity. Here again, the Court must agree.

As this Court has noted previously, guardians ad litem should receive quasi-judicial immunity. Citing the Idaho Supreme Court, this Court has held that "guardians ad litem, appointed under I.C. Section 5–306, operate under the cloak of absolute quasi-judicial immunity." *Beard v. Washington*, 2007 WL 4532248, at *5 (D. Idaho Dec. 17, 2007) (quoting *McKay v. Owens,* 130 Idaho 148, 158 (Idaho 1997)); *see also Balthrope v. Sacramento Cnty. of Health & Hum. Servs*., 2011 WL 6130903 (E.D. Cal. 2011), report and recommendation adopted, 2012 WL 260044 (E.D. Cal. 2012) (collecting cases from jurisdiction that had determined guardians ad litem should be given immunity).

As before, Paddock may disagree with Sasser's actions, but she does not point to anything suggestion those actions were *outside* Sasser's role as a court-appointed guardian ad litem. Sasser's recommendation and placement of the minor child with Dixon was a

valid exercise of a guardian ad litem's discretion. As a result, immunity applies and the claims against her must be dismissed.

Sasser's Motion to Dismiss (Dkt. 18) is GRANTED.

3. *Defendant Dixon (Dkt. 21)*

Defendant Dixon filed a petition for guardianship of Paddock's minor child M.B. on September 13, 2021. On September 14, 2021, Andrew Ballou—M.B.'s legal father[10]— signed his consent to the appointment of guardian. Paddock was served on September 16, 2021. Also on September 16, 2021, the court appointed Sasser as guardian ad litem, the Judge issued the letter of temporary guardianship appointing Dixon as guardian of M.B., Dixon filed her notice of temporary guardianship of the minor, and the Judge signed the order appointing temporary guardian. Ultimately, Paddock's various motions were denied, and Dixon's motions were granted.

As noted above, this whole lawsuit stems from Paddock's disagreement with Sasser's recommendation that Dixon be granted a guardianship over M.B., and the fact that Judge Onanubosi granted Dixon temporary guardianship of M.B. Paddock claims Dixon is violating her right to familial association, right to privacy, her Sixth Amendment right to be free from hearsay, and her due process rights under the Fifth and Fourteenth Amendments. Each claim is brought under 42 U.S.C. § 1983.

The primary problem with Paddock's claims against Dixon is that Dixon is not a state actor. To be sure, there are certain circumstances in which private action can be

---

[10] The Court is not certain, but knows from the prior case that Dixon is, or was, Ballou's spouse or significant other.

deemed state action. *See Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008) (en banc) ("State action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.") (cleaned up). Further, "[a]ction taken by a private individual may be 'under the color of state law' where there is 'significant' state involvement in the action." *Howerton v. Gabica*, 708 F.2d 380, 382 (9th Cir. 1983).

Thus, certain custody and guardianships actions may—*in rare circumstances*—be deemed state action. The Ninth Circuit has identified a number of tests a Court can use to identify when, and if, private action becomes state action. Those "factors or tests" include: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus. *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). The Court will briefly discuss each option and why Dixon's actions *do not* constitute state action.

"Under the public function test, 'when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the state and subject to its constitutional limitations.'" *Lee v. Katz*, 276 F.3d 550, 554–55 (9th Cir. 2002) (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966)). Dixon is not a state actor under the public function test because she is not endowed with any state powers. Moreover, Dixon is not acting on behalf of the state or in concert with the state, nor is she enforcing or functioning in any role that is governmental in nature as guardian of M.B. Paddock fails to plead any facts that would give rise to any inference that Dixon's actions qualify as governmental in nature.

Under the joint action or participation test, "a private party acts under color of state law if 'he [or she] is a willful participant in joint action with the State or its agents.'" *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (cleaned up). Dixon is not a state actor under the joint action test because she is not a willful participant, or acting in concert with the state, and is not exercising any state power in her actions as guardian. In addition, there is no joint action present because Dixon acted independently from the state in filing her own petitions for guardianship in this case.

The coercion test for whether one is a state actor is applied most often in situations vastly different from the facts present here. *See, e.g., Anderson v. Craven*, 2009 WL 804691, at *4 (D. Idaho Mar. 26, 2009) (case involving forced participation in religion-based rehabilitation program in prison). Dixon is not a state actor under the coercion test because this test is inapplicable to the facts in this action and there is no forced participation in any action.

Finally, under the governmental nexus test, "a private party acts under color of state law if there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Lopez*, 939 F.2d at 883 (cleaned up). Dixon is not a state actor under the governmental nexus test because she did not do anything to aid the state in depriving Paddock of any rights. Dixon simply (and validly) exercised her rights, duties, and responsibilities as the guardian of Paddock's child.

In short, Dixon is not a state actor under any of the Ninth Circuit tests, and consequently, she is not liable under 42 U.S.C. § 1983. Accordingly, Paddock's allegations against Defendant Dixon must be dismissed.

Dixon's Motion is granted.

4.  *The Bramel Defendants (Dkt. 26)*

Defendant Chris Bramel is the father of Paddock's minor child E.B. Defendants Stephen Bramel and Cindy Bramel are Chris Bramel's parents. The only allegations against the latter two Bramels are that they conspired against Paddock and used their "wealth, club memberships, and friendships" to influence the Judges during the custody proceedings. Dkt. 1, at 21.

Again, the four tests from above apply here as well. The Court will not repeat that information here. Suffice it to say, Paddock does not make any allegations that would lead to the conclusion that any of the Bramel Defendants' actions qualify as a public function, as joint action with the government, or that would have a sufficient governmental nexus. In like manner, there is nothing in Paddock's Complaint to suggest the Bramels' actions constitute governmental compulsion or coercion.

Again, even assuming arguendo that the Bramels did something "discriminatory or wrongful," such would still not be enough to be actionable under § 1983 because it cannot be said that behavior was "state action." It must be "fairly attributable to the state" in order to fall within the parameters of § 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

As with Dixon, the Court must likewise dismiss the Bramels as Paddock cannot show their actions constitute state action. They cannot be liable under § 1983, and therefore, Paddock's claims against them are dismissed.

The Motion is GRANTED.

5. *Conclusion*

In her Complaint, Paddock has alleged certain claims that may or may not fall squarely within the framework of a broader § 1983 claim. For example, Paddock has claims titled "Right to Privacy," and "Right to Familial Association." She also has claims under the Fifth and Fourteenth Amendments and claims for "A Right Not to Be Subject to Hearsay Evidence." The Court has construed all of these claims under § 1983 as civil rights violations. The Court did this because of the factual nature of the case—allegations of misconduct in state court proceedings "under color of state law"—but also because of the requested relief—injunctive relief from state action.

That said, even if the Court were to view Paddocks challenges as stand-alone claims *not* within a § 1983 framework, they would all fail as a matter of law. The facts in Paddock's complaint are little more than disagreements with the Defendants. While she alleges Defendants are all engaged in a grand conspiracy against her, she supports the allegations with self-serving interpretations of Defendants' actions, suppositions as to their interests and motivations, and bare conclusions. This is not enough.

Judge Dale previously found that Paddock had not supported *any* of her nine claims (against eleven Defendants) and had failed to plead sufficient facts to state a plausible claim

for relief. *See generally Paddock v. Ballou*, 2018 WL 3642443, at *11 (D. Idaho Aug. 1, 2018). The same is true here as well. The Court will *briefly* explain why.

      a.  <u>Count One – Right to Familial Association Under the First, Fourth, and Fourteenth Amendments</u>

Paddock alleges all of the Defendants violated her right of familial association—that is, the right for parents and children to live together without interference by the government. *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000). This essential liberty interest is protected by the Fourteenth Amendment's "guarantee that parents and children will not be separated by the state without due process of law[,] except in an emergency." *Id.*; *see also Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001). When the state has a legitimate interest in interfering with a parent-child relationship, the state may legitimately interfere so long as it provides "fundamentally fair procedures." *Alberici v. Cnty. of L.A*, 2013 WL 5573045, at *15 (C.D. Cal. Oct. 9, 2013) (quoting *Santosky v. Kramer*, 455 U.S. 745, 754, (1982)).

Paddock has not demonstrated that any Defendants' actions in this case were so egregious or ill-conceived that they warrant this Court's intervention. Furthermore, Paddock has not shown that she was deprived of any process or procedure. To be sure, Paddock does not agree with how the process turned out; but there is no indication she was not afforded everything *within that process* she was legally entitled to.

In short, Paddock has not made sufficient allegations to show that Defendants' actions—as judges, as guardian ad litem, or as individuals—constituted a violation of her right to familial association under the First, Fourth, or Fourteenth Amendment.

b.   Count Two – Right to Privacy Under the Ninth and Fourteenth Amendments

Paddock claims Dixon, Sasser, and the Bramel Defendants committed the tort of invasion of privacy by providing allegedly false information to the Court. Such facts *could* conceivably constitute an invasion of privacy based upon the public disclosure of falsity if the information was actually false and was actually disseminated. *See Hancock v. Idaho Falls Sch. Dist. No. 91*, 2006 WL 1207629, at *5 (D. Idaho 2006) (discussing claim for public disclosure of private facts based upon testimony given at a hearing). However, "publicity" requires communication to the public at large. *Id*. There are no allegations that these Defendants published private information of any type in any news medium or addressed these matters with a large audience. Consequently, no facts are alleged to support the public disclosure required to establish the elements of invasion of privacy against Defendants Dixon, Sasser, and the Bramels.

c.   Count Three – Right to Due Process Under the Fifth and Fourteenth Amendments

Paddock brings this claim against all Defendants alleging each violated her Due Process rights and took part in a corrupt system. Dkt. 1, at 22.

Similar to the Court's analysis above regarding private § 1983 actions, "private citizens, acting in their private capacities, cannot be guilty of violating due process rights. The Fifth Amendment is a restraint on the federal government, not on private citizens." *Canadian Transp. Co. v. United States*, 663 F.2d 1081, 1093 (D.C. Cir. 1980). Thus, Paddock's claim against the individual Defendants dissolve at the outset.

Additionally, "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is a category beneath the threshold of constitution due process." *Id*. To impose liability for a violation of an individual due process right, the official's action must "shock the conscience." *Id*. at 846.

Even taking Paddock's allegations against the Judges and Sasser—the state actors— at face value, she has not raised a plausible inference that any of her due process rights have been violated. She received due process—she just didn't like the outcome.

Notably, Paddock was represented by counsel during the state court proceedings. And it is true she was denied the relief she sought. *But* she was not deprived of any due process by those involved in reaching that decision. The actions of the court, the judges, and the guardian ad litem here do not "shock the conscience."

In sum, Paddock's Fourteenth Amendment due process claim fails given the procedures followed were fundamentally fair.

d.  Count Four – Right to Not be Subject to Hearsay Under the Sixth Amendment

Paddock alleges that Defendants Dixon, Sasser, and the Bramels violated her Sixth Amendment right as their false reports were based on hearsay.

The Sixth Amendment guarantees certain rights to defendants in criminal prosecutions, which rights include the right to a speedy and public trial by an impartial jury; to be informed of the nature of the charges; to be confronted with the witnesses against

MEMORANDUM DECISION AND ORDER - 21

her; to have compulsory process for obtaining witnesses to testify in her favor; and to have the assistance of counsel for her defense. U.S. Const. amend. VI.

Paddock's claim that various Defendants subjected her to hearsay evidence does not come within the purview of the Sixth Amendment.

e. Count Five – Freedom of Speech Under the First Amendment

Paddock levies this count solely against Judge McDevitt for not "allowing [her] to use hand gestures that were not lewd or to be allowed to communicate with her attorney in court." Dkt. 1, at 22. Paddock's perceptions of Judge McDevitt's actions notwithstanding, it is within a Court's discretion to govern his or her courtroom as he or she sees fit in order to maintain order, decorum, and the proper admission of evidence, testimony, and argument. This is not a free speech issue or a civil rights issue.

f. Other Claims

Finally, Paddock raises other "claims" in her Complaint. For example, she alleges all the Defendants violated her Thirteenth Amendment Rights. Dkt. 1, at 23. The Thirteenth Amendment deals with slavery and involuntary servitude. The Court does not see any facts warranting a discussion about those topics in this case. In like manner, Paddock accuses the Defendants of providing false statements in violation of 31 U.S.C. § 3802. There is no indication this statue provides for a private cause of action or applies to the facts of this case. Again, the Court sees no reason to discuss this further.

In addition to the two examples just cited, Paddock levels numerous accusations and claims against the Defendants that are *not* actually part of her five main causes of action. The Court will not reiterate them all here. Suffice it to say, the Court has thoroughly

reviewed Paddock's full 27-page complaint and finds nothing therein rises to a federal cause of action. Her Complaint must be dismissed in its entirety.

What's more, the Court *will not* allow Paddock an opportunity to amend her Complaint. The claims at issue here fail as a matter of law; no set of facts could change the Court's ruling. Amendment would be futile. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

## IV. ORDER

1. The Defendants' Motions to Dismiss (Dkts. 11, 14, 20, and 26) are GRANTED.

2. Paddock's Motion to Disqualify (Dkt. 18), Motion for Summary Judgment (Dkt. 21), and Motion for Default (Dkt. 30) are DENIED.

3. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

4. This case is closed.

DATED: August 5, 2022

David C. Nye
Chief U.S. District Court Judge